IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTY GIBBS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 23-CV-97-GLJ |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| Commissioner of the Social | ) |
| Security Administration | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Claimant Christy Gibbs requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED AND REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kijakazi as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically sever impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

## Claimant's Background and Procedural History

Claimant was fifty-one years old at the time of the administrative hearing. (Tr. 47). She completed eighth grade and has past relevant work as a CNA. (Tr. 47, 65-66). Claimant alleges an onset date of February 21, 2021, due to limitations imposed by bipolar disorder, manic depression, acid reflux, bilateral hip dislocation, "prior surgery hardware protruding from left ankle," migraines, bilateral shoulder pain, scoliosis, bulging discs, and degenerative disk disease. (Tr. 33, 263, 277).

## Procedural History

On June 15, 2021, Claimant protectively applied for disability insurance benefits and disabled widow's benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. (Tr. 113, 250-52). On August 12, 2022, Administrative Law Judge ("ALJ") Mark Kim conducted an administrative hearing and entered an unfavorable decision on August 25, 2022. (Tr. 22-35, 42-69). The Appeals Council denied review (Tr. 6-12), making the ALJ's opinion the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.971.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. (Tr. 33-34). At step two he determined that Claimant had the severe impairments of lumbar and cervical

degenerative disk disease, diabetic peripheral neuropathy, obesity, bipolar disorder, anxiety disorder, and depressive disorder. (Tr. 25). Additionally, he found Claimant had the non-severe impairments of hip/ankle/shoulder pain or disfunction, asthma, hypertension, and migraines/headaches. (Tr. 25-27). He found at step three that Claimant did not meet any Listing. (Tr. 27-29). At step four he found Claimant had the residual functional capacity ("RFC") to perform a limited range of light work, *i.e.,* she could sit/stand/walk six hours in an eight-hour workday, occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds, can crouch or climb stairs less than occasionally (defined as 5% of the workday or less), occasionally balance, stoop, and kneel, frequently handle, finger, and feel objects bilaterally, and must avoid unprotected heights. (Tr. 29). Due to psychologically-based limitations, the ALJ found Claimant could perform simple, routine tasks and perform work involving only occasional and superficial interactions with the public. (Tr. 29). The ALJ then concluded that although Claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *i.e.*, router, marker, and inspector/packer. (Tr. 33-34).

## Review

Claimant contends that the ALJ erred by failing to: (1) provide a narrative explanation for his RFC findings as required Soc. Sec. R. 96-8p, (2) properly analyze Dr. Deborah Fisher's medical source opinion, (3) develop the record and create a mental RFC without any medical opinion, and (4) conduct a proper pain analysis. The Court agrees with Claimant's first, second and fourth propositions.

The relevant medical evidence reveals that in 2015 Claimant underwent an anterior cervical diskectomy and fusion of the C5-6 and C6-7 vertebrae after being assessed with cervical herniated nucleus pulposus, cervical stenosis, cervical radiculopathy, and cervical myelopathy. (Tr. 876-77, 1049-50). Claimant did not undergo physical therapy, but endorsed continued neck and spinal pain, in addition to some difficulty breathing in her follow-up appointments through February 2016. (Tr. 1052-57). Between January 2018 and July 2022, Claimant visited pain management physician Dr. Deborah Fisher generally once a month for follow-up appointments relating to chronic pain in her left leg, left shoulder, neck, and back. (Tr. 1090-1290, 1304-1338). Throughout these visits, Claimant indicated that medication allowed her to be more functional and reported that her pain, with medication, generally ranged between 6-8 out of 10. (Tr. 1090-1335). Dr. Fisher also noted claimant had difficulty walking and muscle pain or cramps at every visit. (Tr. 1090-1335).

In August 2022, Dr. Fisher completed a treating physician's clinical assessment form in which she indicated Claimant could stand/walk/sit for less than 2 hours per workday, occasionally lift up to but not more than 5 pounds, less than occasionally bend and never climb, balance, stoop, kneel, crouch, or crawl. (Tr. 1343-44). She further found Claimant required complete freedom to rest without restriction when not sitting, standing, or walking to relieve the pain arising from her medical impairments. *Id.* Dr. Fisher indicated these limitations were a result of Claimant having difficulties with functional mobility due to pain and cited Claimant's MRIs, CT scan, and laboratory results as supporting her findings. (Tr. 1345).

Between February 2019 and June 2022, the record reflects Claimant also consistently visited her primary care nurse practitioner Tressa Matchen, NP. On April 10, 2019, Ms. Matchen assessed Claimant with moderate persistent asthma with acute exacerbation. (Tr. 493). Additionally, Claimant's records indicate she was assessed with bipolar disorder in 2010, but a notation indicates it remains controlled with medication. (Tr. 450, 453). Nonetheless, she reported having mania with high irritability on at least one occasion. (Tr. 846). Claimant also reported having anxiety attacks (Tr. 422, 453), instances of "blacking out" (Tr. 417), and back pain and/or muscle cramps (Tr. 540, 683, 841-42, 459, 499). Claimant was also assessed with sinus tachycardia on November 19, 2020. (Tr. 621).

During this time, Claimant underwent three MRIs. In June 2019, an MRI of Claimant's lumbar revealed moderate loss of disc space height at L1-L2, osteophytes, evidence of previous cholecystectomy, moderate central canal stenosis at L3-L4 related to a disc bulge, multilevel neural foraminal narrowing most pronounced at L5-S1, and mild levoscoliosis. (Tr. 392). A cervical MRI completed in November 2019 showed moderate right-sided and minimal left-sided neural foraminal narrowing with osteophytes and no significant central canal stenosis at C2-C3, moderate left-sided neural foraminal narrowing with no narrowing of the right-side with osteophytes and no central canal stenosis at C3-C4, moderate right-sided and severe left-sided neural foraminal narrowing with osteophytes and no significant central canal stenosis at C4-C5, moderate bilateral neural foraminal narrowing with osteophytes, distortion of the anterior cord, and mild central canal stenosis at C5-C6, mild to moderate right-sided and moderate left-sided neural

foraminal narrowing with osteophytes and minimal central canal stenosis at C6-C7, and no significant canal stenosis or neural foraminal narrowing at C7-T1. (Tr. 387-88). A second lumbar MRI performed on March 24, 2020 revealed: (1) lumbar spine multilevel chronic degenerative changes with L3-L4 level apex levoscoliosis and dehydrated disc mild posterior broad-based annular bulges producing moderate to severe impingement of the neural exit canals bilaterally at the L3-L4, L4-L5, and L5-S1 levels, (2) multilevel varying degrees of intervertebral disc spaces narrowing most marked at L1-L2 and L3-L4, and (3) no central spinal stenosis or acute process. (Tr. 1076).

Throughout 2021 and 2022 Claimant visited the emergency department on several occasions. (Tr. 911, 923, 936, 986). During these visits Claimant was noted as having a normal gait, behavior, mood, affect, and "full, normal range of motion" with "no evidence of tenderness throughout." (Tr. 917, 927, 937, 944, 965, 969-70, 1008). At a visit on May 18, 2022, however, Claimant presented to the emergency department after experiencing a "pop" in her back that caused backpain and abnormal sensation in her legs. (Tr. 1014). Claimant's providers noted that she had normal range of motion in her back but experienced pain when rotating. (Tr. 1019). Then, on June 2, 2022, Claimant presented to the emergency department after being involved in a vehicular accident where she passed out while driving. (Tr. 1022, 1028). Medical providers noted Claimant experienced moderate pain in her neck with any movement, and moderate pain in her thoracic, lumbar, and sacrum. (Tr. 1028). A cervical CT scan revealed Claimant's prior cervical fusion and noted there were no fractures or spondylolisthesis. (Tr. 1038). Thereafter, Claimant's primary care physician referred Claimant to a pulmonologist for a sleep study. (Tr. 1071-

72). On July 13, 2022, Claimant underwent a sleep study and was subsequently diagnosed with mild obstructive sleep apnea. (Tr. 1340). In connection with the sleep study, Claimant underwent a six-minute walk assessment in which she walked 240 meters at a moderate pace without stopping. (Tr. 1295). However, her pace slowed after three minutes. And at six-minutes Claimant reported being lightheaded. (Tr. 1295).

In late 2021, State examiners determined initially and upon reconsideration that there was insufficient evidence to determine the severity of Claimant's conditions. (Tr. 87-98).

At the administrative hearing, Claimant testified that she does not receive mental health counseling, but she is prescribed medication for her mental health. (Tr. 48). She testified that she gets tense when she is around "a lot of people." (Tr. 49-51). As to her physical limitations, Claimant testified that she is unable to stand or sit (without changing positions) for more than ten to fifteen minutes at a time. (Tr. 51-52). Similarly, she indicated that she does not wash dishes, clean laundry, vacuum, mop, or go grocery shopping due to her physical limitations. (TR. 51, 54). However, she can shower without assistance due to the use of a shower chair. (Tr. 54).

The ALJ then elicited testimony from a vocational expert ("VE") to determine what jobs the claimant could perform given the RFC described above. (Tr. 66-67). The VE testified that such a claimant could perform the representative jobs of router, marker, and inspector packer. (Tr. 67). The ALJ then offered a modified hypothetical in which the individual would be unproductive for 20 percent of the workday, take unscheduled breaks,

or produce work at a slower rate than a worker at the same location. (Tr. 67). The VE testified that such a person would be unemployable. (Tr. 67-68).

In his written opinion at step four, the ALJ briefly discussed Claimant's hearing testimony as it pertained to Claimant's anxiety and generally discussed the medical evidence in the record. (Tr. 31-37). He then found that Claimant's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with treatment records. (Tr. 33). The ALJ found the opinions of the state agency medical and psychological consultants not persuasive because they concluded the record was insufficient to reach a determination as to Claimant's RFC. (Tr. 32). Similarly, he found the opinion of Dr. Fisher not persuasive because the form she utilized did not offer any support or explanation for the "extreme limitations marked," and the limitations were not consistent with the record. (Tr. 32-33).

Claimant challenges the ALJ's RFC assessment on several bases. Primarily, she contends that the ALJ failed to sufficiently link his RFC determinations to evidence in the record as required by Soc. Sec. R. 96-8p. The Court agrees with Claimant. Although the ALJ included some postural limitations related to Claimant's physical impairments in the RFC, the ALJ has connected no evidence in the record to instruct this Court as to how such limitations account for Claimant's severe impairments. The ALJ supports his RFC assessment only by noting "if exams resulted in notations of any musculoskeletal abnormalities, they were limited to tenderness to palpation in the claimant's back or glutes, with range of motion testing noted to elicit some pain . . . [and] without any persistent . . . limiting findings, the record is consistent with the ability to perform the reduced range of

light work." (Tr. 31-32). Despite this, it remains unclear how Claimant could perform the lift/carry requirements or the sitting, standing, and walking requirement of light work given the evidence in the record as to her combination of impairments and the complications flowing therefrom.

The ALJ has pointed to no evidence in the record indicating Claimant has the capability to perform the assessed RFC (indeed, the only examining provider deemed otherwise), and "it is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *5 (D. Kan. Sept. 11, 2013); *see also Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 740-41 (10th Cir. 2007) ("The ALJ's inability to make proper RFC findings may have sprung from his failure to develop a sufficient record on which those findings could be based. The ALJ must make every reasonable effort to ensure the file contains sufficient evidence to assess RFC.") (internal quotations omitted).

As a part of this argument, Claimant contends the ALJ failed to account for her non-severe impairments of asthma, obstructive respiratory disease (sleep apnea), and tachycardia and the impact these impairments have on her RFC. The ALJ's decision contains no discussion of Claimant's tachycardia and to the extent the ALJ discusses Claimant's asthma and obstructive respiratory disorder he deemed these impairments nonsevere at step two but failed to consider her impairments *in combination* when formulating Claimant's RFC at step four. (Tr. 26-33). *See e.g.*, *Carpenter v. Astrue*, 537

F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].' Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004)). *See also Hill v. Astrue*, 289 Fed. App'x 289, 292 (10th Cir. 2008) ("Once the ALJ finds the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find the additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the Claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinably impairments, both those he deemed 'severe' and those 'not severe.'") (emphasis in original) (internal citations omitted). Because the ALJ failed to account for the Claimant's documented asthma impairment, sleep apnea, and tachycardia in formulating her RFC, the RFC does not wholly account for her impairments. Additionally, this reflects a failure to assess the combined effect of all Claimant's impairments, both severe and nonsevere, for her RFC despite the fact that "the ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells*, 727 F.3d at 1065.

Claimant also argues that the ALJ erred in evaluating the medical opinion of Dr. Fisher by failing to consider or discuss the medical records which supported Dr. Fisher's

assessment. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(c). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered, although the ALJ is generally not required to explain how the other factors were considered. *See* 20 C.F.R. 404.1520c(b)(2), 416.920c(b)(2). However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) and (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(3). The supportability factor examines how well

a medical source supported their own opinion with "objective medical evidence" and supporting explanations." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(C)(2).

The Court finds the ALJ erred in his analysis of Dr. Fisher's medical opinion. Here, the ALJ discussed the evidence that contradicted Dr. Fisher's opinion and ultimately found her opinion unpersuasive because the "form offers almost no support, narrative or otherwise, to explain the extreme limitations marked by the claimant's treatment provider." (Tr. 32-33). However, the ALJ focused solely on the fact that Dr. Fisher's assessment offered little information to support her findings and that her assessed limitations were "far beyond anything in the record." (Tr. 33). The ALJ engaged in no discussion of the evidence that supported the limitations assigned by Dr. Fisher. Dr. Fisher's clinical assessment form indicates her opinion is supported by MRIs, CAT scans, and laboratory results and that her assessment was consistent with Claimant's symptoms and limitations because Claimant has difficulties with functional mobility due to pain. (Tr. 1344-45). Despite this, the ALJ did not discuss or summarize any of Claimant's visits with Dr. Fisher which documented Claimant's pain and difficulty walking nor did the ALJ discuss the six-minute walking assessment or Claimant's testimony relating to her ability to stand/walk/sit. *See* (Tr. 22-35). This failure to properly account for the evidence has a direct impact on the ALJ's assessment as to the claimant's ability to perform the physical demands of the RFC. This was error. *See, e.g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."); *see also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all

of the evidence in the record, he may not ignore evidence that does not support his decision, especially when the evidence is 'significantly probative.'") (internal citations omitted). Moreover, by rejecting Dr. Fisher's medical opinion, the ALJ was left without a medical opinion to rely on in forming his RFC determination and, "[a]lthough a medical opinion is not required for the RFC determination, '[i]n cases in which the medical opinions appear to conflict with the ALJ's decision regarding the extent of plaintiff's impairment(s) to the point of posing a serious challenge to the ALJ's RFC assessment it may be inappropriate for the ALJ to reach an RFC determination without expert medical assistance.'" *J.Z. v. Kijakazi*, 20-1280-JWB, 2022 WL 859765, at \*6 (D. Kan. Mar. 23, 2022) (quoting *Pedraza v. Berryhill*, No. 17-2152-SAC, 2018 WL 6436093, at \*4 (D. Kan. Dec. 7, 2018)); *Wells v. Colvin*, 727 F.3d 1061, 1071-72 (10th Cir. 2013).

Similarly, Claimant argues the ALJ erred by assessing Claimant's mental RFC without a medical opinion and by failing to develop the record by ordering a consultative examination. As noted above, "a medical opinion is not required for the RFC determination, [but] '[i]n cases in which the medical opinions appear to conflict with the ALJ's decision regarding the extent of plaintiff's impairment(s) to the point of posing a serious challenge to the ALJ's RFC assessment it may be inappropriate for the ALJ to reach an RFC determination without expert medical assistance.'" *J.Z.*, 2022 WL 859765, at \*6. Ultimately, it is "the ALJ's responsibility, not a physician's, to assess a claimant's RFC from the medical record." *Berumen v. Colvin*, 640 F. App'x 763, 766 (10th Cir. 2016) (citing *Chapo*, 682 F.3d at 1288.). Here, unlike the ALJ's physical RFC assessment discussed above, there is not a medical opinion in the record that contradicts the ALJ's

mental RFC determination. As such, it was not error for the ALJ to form an RFC based on the medical evidence of record without a medical source opinion. *Troutman v. Kijakazi*, CIV-21-920-SM, 2022 WL 2960134, at *4-5 (W.D. Okla. July 26, 2022). (finding the ALJ did not "play doctor" when the ALJ proffered an adequate explanation for rejecting the [medical opinion] and determined Plaintiff's RFC based on the evidence of record[.]" As to Claimant's assertion that the ALJ failed to develop the record, there is no indication that counsel requested further medical examinations, and the need was not clearly established in the record. *Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016) ("[I]f the Claimant's attorney does not request a consultative examination, the ALJ has no duty to order one unless the need 'is clearly established in the record.'"). Nonetheless, on remand, the Court encourages the ALJ to consider ordering a consultative examination to properly account for both Claimant's physical *and* mental impairments. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").

Lastly, Claimant contends the ALJ committed reversible error at step four by failing to conduct a proper pain analysis with respect to her severe impairments of obesity, peripheral neuropathy, and degenerative disc disease. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we

> evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. R. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] *See also Musgrave v. Sullivan*, 966 F.2d 1371, 1375 (10th Cir. 1992) (The ALJ must "consider (1) whether a Claimant established a pain-producing impairment by objective evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and Claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, claimant's pain is in fact disabling."). Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e.g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[4] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures Claimant uses

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna*) and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. R. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotations omitted). The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. R. 16–3p, 2017 WL 5180304 at *10.

Claimant contends, *inter alia*, that the ALJ failed to consider the factors set forth above when evaluating her subjective statements, and the Court agrees. Here, the ALJ cited to Soc. Sec. R. 16-3p and 20 C.F.R. §§ 404.1529(c) at the beginning of step four without *applying* those factors to the evidence. (Tr. 29-30). Although the ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,] *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 1000), simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. R. 16-3p, 2017 WL 5180304, at *10. The ALJ's failure to properly assess the consistency of Claimant's statements regarding her subjective symptoms again highlights that the ALJ failed to explain how *all* of her impairments are accounted for in the RFC as required by Soc. Sec. R. 96-8p. "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that Claimant can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC

findings." *Jagodzinski*, 2013 WL 4849101, at *5. The Court must be able to follow the logic, and here it cannot. *See Id.*, 2013 WL 4849101, at *2.

Because the ALJ failed to properly evaluate *all* Claimant's impairments and the opinion evidence of record the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of Claimant's impairments. If such analysis results in any changes to Claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that the decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and the case REMANDED for further proceedings.

**DATED** this 1st day of March, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**